UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| PHAEDRA SPRADLIN, | ) | |
| as Trustee of Alma Energy, LLC, et al., | ) | |
| | ) | |
| Appellants, | ) | Civil No. 12-111-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| PIKEVILLE ENERGY GROUP, LLC, et | ) | **AND ORDER** |
| al., | ) | |
| | ) | |
| Appellees. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

When an engineer was hoist by his own petard during a siege, it was the result of poor timing.  The engineer's job was to place the petard, a portable bomb, at the castle's wall or door.  He would then wheel around and hope he could outrun the coming blast.  Sometimes—due to a fast burning fuse or loose powder trains—the petard would explode early.  The unfortunate engineer would then be, as the saying goes, hoist by his own petard.  *See* John F. Guilmartin, The Reader's Companion to Military History 427 (Robert Cowley & Geoffrey Parker eds., 1996).

The plaintiff-appellants in this case initiated an adversarial proceeding before the Bankruptcy Court and then voluntarily amended their original complaint.  The Bankruptcy Court correctly determined that after the amendment it lost jurisdiction.  Thus, like the proverbially unfortunate engineer, the plaintiffs are the victims of unfortunate timing—hoist by their own amendment.

# BACKGROUND

As the Bankruptcy Court observed, this case has a "tortured history" that winds through a "scrambled maze of facts and allegations." R. 4-1 at 4. Rather than repeat that tortured history, the Court simply retraces the path that brought the parties to this appeal.

It began in 2005, with the formation of a now-defunct coal company, Alma Energy, LLC. *See* Complaint, *Spradlin v. Pikeville Energy Group, LLC* (*In re Alma Energy, LLC*), No. 7:09-ap-07005-jl (Bankr. E.D. Ky. Aug. 13, 2007) [hereinafter "*Adversary Proceeding*"], R. 1 at ¶ 19. Alma purchased mineral leases in three Kentucky coal mines and soon began mining. *Id.* In an effort to expand its operations and invest in additional properties, Alma started looking for capital investors in early 2006. That search led Alma to several investors, including Warren Halle and THC Kentucky Coal Venture I, LLC (THC). *Id.* at ¶ 20. Together, they formed Kentucky Coal Venture I, LLC (KCVI) as a corporate instrument to facilitate their joint venture. *Id.* THC was designated the managing member of KCVI with full control of its business decisions, while Halle and other investors were named members. *Id.* By agreement, Alma transferred all its mineral-lease rights to KCVI in exchange for: funding from KCVI, the exclusive right to mine and sell coal from the existing three mines, and similar rights to any other coal properties KCVI acquired in the next 20 years. *Id.* at ¶ 23; R. 4-1 at 4. Alma and KCVI would then split the profits from Alma's mining. *See Adversary Proceeding*, R. 1 at ¶ 24.

Their budding alliance soon fractured. In 2007, both KCVI and Alma accused each other of defaulting on their agreement. KCVI sued Alma in the United States District Court for the District of Maryland. R. 4-1 at 5. The financial strain of the litigation pushed Alma

2

into dire straits, and it soon filed for Chapter 11 bankruptcy in the Eastern District of Kentucky. *Id.* In bankruptcy court, Alma filed two adversary proceedings. The first alleged various state-law claims against KCVI, THC, and Halle (collectively, the Halle Entities). *Id.* The second claimed KCVI and Halle had violated the Bankruptcy Code's automatic stay provisions. *Id.* At the end of 2007, however, all three suits—the Maryland case and both adversary proceedings—were settled ("2007 Settlement Agreement"). *Id.* at 6. The parties agreed to divide operations along state lines, with the Halle Entities operating properties in West Virginia and Alma operating properties in Kentucky. *Id.*

Having struck an uneasy peace with the Halle Entities, Alma had enough stability to pursue potential investors for their operations in Kentucky. *See Adversary Proceeding*, R. 1 at ¶ 63. Alma eventually worked out a deal with mining company Blackberry Energy, LLC and Pikeville Energy Group, LLC. The plan was simple. Alma would let Blackberry mine the coal covered in its mineral leases, Blackberry would sell the coal to Pikeville Energy, and Pikeville Energy would then market it to third-party purchasers. *Id.* at ¶ 65. Executing the plan, however, proved difficult. When Alma filed a motion with the Bankruptcy Court to approve their interim mining agreement and allow commencement of mining operations, the Halle Entities filed an objection raising numerous challenges to the proposed operation. *Id.* at ¶¶ 68–69. According to Alma's original complaint, this objection was a per se violation of the 2007 Settlement Agreement. *See id.* at ¶ 68.

After a hearing, the Bankruptcy Court ordered the parties to work out their differences. *Id.* at ¶ 72. Negotiations were allegedly very heated, with personal insults and threats exchanged. *Id.* ¶¶ 75−76. And as the negotiations dragged on, the costs of the crews

3

and equipment at Alma's idle mines mounted.  *Id.* at ¶ 77.  Despite the lack of agreement with the Halle Entities, Alma and its new partners eventually won court approval of their interim mining agreement.  *Id.* at ¶ 89.  However, Pikeville was unable to secure third-party vendors to purchase Alma's coal, which Alma originally blamed on interference by the Halle Entities.  *Id.* at ¶¶ 91–99; R. 4-1 at 6.

The hostilities between Alma and the Halle Entities once again gave way to outright litigation.  On May 4, 2009, Alma filed the adversary proceeding from which this appeal arises.  R. 4-1 at 6.  Alma's original complaint brought numerous claims against the Halle Entities and several of their business associates.[1]  The claims had a common theme:  the Halle Entities and their associates breached the "the spirit and intent of the 2007 Settlement Agreement," *id.*, and wrongly interfered with Alma's reorganization efforts, *see Adversary Proceeding*, R. 1 at ¶¶ 100–220.  The complaint did not allege any wrongdoing by, or seek any damages from:  Pikeville Energy; Pikeville Energy members Gary Richard and Brett Morehouse; or Richard's other company, Banner Industries of N.E., Inc.  *See id.*  In fact, Morehouse and Banner were not even mentioned.  Oddly, Alma still named Pikeville Energy and Blackberry as defendants, along with several of Alma's other partners in its reorganization efforts.  *See id.* at 1–2.  Alma did not do this because it had viable claims against them or because it wanted some affirmative relief at their expense.  Instead, Alma named them as defendants out of a belief that, "in their absence, the Court cannot complete relief among Alma and the Halle Entities."  *Id.* at 7.  Seventeen days after Alma filed the

---

[1]  Those additional defendants were Consol Capital, LLC, a corporation owned partly by Warren Halle, and Consol's two other members, Jodi Waber and Tony Gannacone, III.  *See Adversary Proceeding*, R. 1 at ¶¶ 9–11.  They are no longer parties to this action because THC (who would later become a plaintiff in this proceeding) dropped them as defendants when it filed its amended complaints.  *See Adversary Proceeding*, R. 73; *id.*, R. 416.

adversary proceeding, Alma's bankruptcy case was converted from a Chapter 11 proceeding to a Chapter 7 proceeding.  R. 4-1 at 7.  Phaedra Spradlin was appointed as the Chapter 7 trustee.  *Id.*

With Spradlin at the helm of Alma's Estate, alliances shifted and the nature of the litigation transformed dramatically.  Spradlin quickly entered into a settlement with the Halle Entities (2009 Settlement Agreement).  *Id.*  The 2009 Settlement Agreement included two key provisions that shape this appeal.  First, Alma sold THC certain leases, personal property, and its claims against the other defendants.  *Id.*  The deal gave THC complete ownership of the "claims and causes of action" Alma had against the parties named in the original complaint—including Pikeville Energy and two of the group's members, Brett Morehouse and Gary Richard.  *Id.* (quoting 2009 Settlement Agreement).  This was not a mere authorization to pursue Alma's claims on the Estate's behalf, but a wholesale transfer "to THC and only THC" of "any and all proceeds with respect to the litigation and/or liquidation of such claims and causes of action."  *Id.* at 8 (quoting 2009 Settlement Agreement at ¶ 8).  Second, the Halle Entities agreed to indemnify the Alma Estate against any claims that might be brought against Alma when THC litigated the transferred claims.  *Id.* (quoting 2009 Settlement Agreement at ¶ 9).

With the deal struck, THC filed an amended complaint and then a second amended complaint—which is the subject of this appeal.  *Id.* at 8–9.  As the Bankruptcy Court observed, the adversary proceeding was "substantially and materially different" under the second amended complaint.  *Id.* at 11.  Both the parties and the theory of the case had changed dramatically.  THC was now a plaintiff, with Spradlin along for the ride in name

5

only.  *Id.* at 8.  And THC added several new defendants who were not even mentioned in the original complaint, including Brett Morehouse and Banner Industries of N.E., Inc.  *See Adversary Proceeding*, R. 416.  The second amended complaint also told "a substantially different account than the original."  R. 4-1 at 8.  The Halle Entities were no longer the saboteurs that Alma's original complaint alleged they were.  *See Adversary Proceeding*, R. 1 at 40.  It turned out that Alma's partnership with Pikeville Energy and Blackberry had really been a scheme to bilk Alma.  *See Adversary Proceeding*, R. 416 at ¶¶ 119−36.  THC's complaint alleged, among other things, that Pikeville and its members conspired to exploit Alma by selling the coal it bought from Blackberry at a substantially higher price and then withholding the additional profits from Alma.  *Id.* at ¶¶ 119−24, 132−36.  THC's complaint also claimed that Richard defrauded Alma and its investors by wrongly diverting investor funds from Alma to his own company, Banner Industries.  *Id.* at ¶¶ 105−13.  All eight counts were state-law torts, seeking damages from nondebtor defendants, on behalf of a nondebtor plaintiff.  *See id.* at ¶¶ 137−217 (alleging various counts of breach of fiduciary duty, aiding and abetting brief of fiduciary duty, conversion, unjust enrichment, and civil conspiracy).

Three of the codefendants soon launched a counterattack.  On January 7, 2011, Pikeville Energy, Richard, and Banner moved to dismiss THC's complaint against them for want of subject-matter jurisdiction.  *Adversary Proceeding*, R. 491.  The codefendants pounced on the fact that, after the 2009 Settlement Agreement, Alma's Estate no longer had any financial stake in the adversary proceeding.  Therefore, they argued, the Bankruptcy Court no longer had jurisdiction under 28 U.S.C. § 1334(b).  *See Adversary Proceeding*, R. 491-1 at 2−6.  Realizing their tactical error, THC and Spradlin scrambled to create an

interest for the estate.  They drafted an assignment granting the Estate the greater of "(i) the first $45,000 from; or (ii) three percent (3.0%) of any recovery of cash or other asset(s)" from the "claims and causes of action assigned by the [2009] Settlement Agreement" ("2011 Assignment"), *see Adversary Proceeding*, R. 521 at 18; R. 4-1 at 11 (quoting the 2011 Assignment).

On January 24, 2012, the Bankruptcy Court granted the codefendants' motion to dismiss the second amended complaint. R. 4-1.  First, the court found that it no longer had subject-matter jurisdiction over the claims against Pikeville Energy and Richard.  The court noted the disagreement among courts as to whether a bankruptcy court can initially have subject-matter jurisdiction over an adversary proceeding but then lose that jurisdiction at a later stage of the proceeding.  *Id.* at 14.  It joined those courts holding that a bankruptcy court can lose jurisdiction and concluded that it had lost jurisdiction over this adversary proceeding.  *Id.* at 15.  The court found that THC's complaint was not "related to" the underling bankruptcy case under 28 U.S.C. § 1334(b) because it had such "an extremely tenuous connection to the estate." *Id.* at 19 (quoting *Mich. Emp't Sec. Comm'n v. Wolverine Radio Co., Inc.* (*In re Wolverine Radio Co.*), 930 F.2d 1132, 1142 (6th Cir. 1991) (emphasis omitted)).  The Bankruptcy Court based that conclusion on three facts:  (1) the 2011 Assignment created only a "miniscule" and "speculative" interest for the Estate; (2) the Estate's interest depended on THC prevailing on its claim, making its interest "further tenuous"; and (3) the 2011 Assignment was an invalid attempt "to 'buy back' subject-matter jurisdiction." *Id.*  The court therefore dismissed THC's complaint as to Pikeville Energy, Richard, and Banner.  *Id.* at 20.  Shortly after that decision, Morehouse filed a motion

seeking to have the complaint dismissed as to him as well, which the Court granted.  *See Adversary Proceeding*, R. 614; *id.*, R. 642.

While the codefendants seemed to have struck a decisive blow, the conflict was not over.  THC rallied, filing a motion to alter or amend the judgment.  *Adversary Proceeding*, R. 624.  That motion raised a previously unnoticed issue:  whether the Bankruptcy Court still had "related to" jurisdiction over THC's claims against Banner because those claims were not part of the 2011 Agreement.  *See Adversary Proceeding*, R. 634.  But THC's argument did not resurrect the proceeding.  The Bankruptcy Court determined that, even though the Banner Claims were "related to" the Estate's bankruptcy under 28 U.S.C. § 1334(b), they were not "core" claims under 11 U.S.C. § 157 (b) and (c).  R. 4-3 at 10–11.  Then, the court reasoned that it should abstain from exercising jurisdiction under 28 U.S.C. § 1334(c)(1) because the balance of factors counseled in favor of letting the parties resolve their claims in state court.  *See id.*  Two weeks later, Spradlin and THC filed this appeal.  R. 1.

## DISCUSSION

This appeal raises two basic issues.  First, did the Bankruptcy Court err in dismissing THC's complaint as to Pikeville Energy, Richard, and Morehouse for lack of subject-matter jurisdiction?  *See id.* at 1.  Second, did the Bankruptcy Court err in abstaining from exercising jurisdiction over THC's claims against Banner?  *See id.*  This Court reviews the Bankruptcy Court's legal conclusions de novo and any factual findings for clear error.  Fed. R. Bankr. P. 8013; *Waldman v. Stone*, 698 F.3d 910, 922 (6th Cir. 2012) (citation omitted).

## I.      Jurisdiction Over the Claims Against Pikeville Energy, Richard, and Morehouse

### A.      The Time-of-Filing Rule

The Bankruptcy Court's opinion and the parties' briefs anchor the jurisdiction issue in the original complaint. They all start with the fact that the Bankruptcy Court had jurisdiction over the original complaint, and ask whether the court then lost that jurisdiction over the course of the adversary proceeding. *See* R. 4-1 at 14−15; R. 7 at 29−33 (Br. 24−28); R. 9 at 19−21; R. 10 at 26−28 (Br. 21−23). None of them analyze the Bankruptcy Court's jurisdiction under the second amended complaint.

The plaintiffs argue that, because the Bankruptcy Court had § 1334(b) jurisdiction over the original complaint, later changes in the litigation could not divest that initial jurisdiction. R. 7 at 30 (Br. 25); *see Holmes Fin. Assocs., Inc. v. Resolution Trust Corp.*, 33 F.3d 561, 565 (6th Cir. 1994) ("Ordinarily, [jurisdiction is established] as of the time the action is filed and subsequent changes will not operate to divest a court of its jurisdiction once it has been properly invoked."). *But see Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989) (noting that, "[l]ike most general principles," the time-of-filing rule "is susceptible to exceptions"). Therefore, the plaintiffs argue, the Bankruptcy Court erred by citing events that took place after the original complaint as its basis for finding that it had no subject-matter jurisdiction. *See* R. 7 at 30 (Br. 25). Under their reading of the so-called time-of-filing rule, the transfer of Alma's right of action to THC was a subsequent event or circumstance that could not—as a matter of law—divest the Bankruptcy Court of jurisdiction. *Id.* This argument is their sole justification for why the 2011 Assignment can create "related to" subject-matter jurisdiction, *id.* at 29–33 (Br. 24−28), and their primary

9

refutation of the Bankruptcy Court's finding that they tried to "buy back" jurisdiction. *Id.* at 36 (Br. 31).

But the plaintiffs overlook a critical fact: THC and Spradlin voluntarily amended the complaint twice. *See Adversary Proceeding*, R. 73; *id.*, R. 416. When plaintiffs voluntarily amend their complaint, federal courts measure jurisdiction at the time the amended complaint was filed. *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473−74 (2007) ("[W]hen a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction."). Bankruptcy jurisdiction is no different. *In re Athos Steel & Aluminum, Inc.*, 71 B.R. 525, 531 (Bankr. E.D. Pa. 1987) (determining subject-matter jurisdiction under 28 U.S.C. § 1334(b) by looking to the amended complaint).

The cases plaintiffs cite do not say otherwise. They either simply state the general time-of-filing rule or address the effect of subsequent actions that did not alter the complaint itself. *See* R. 7 at 24−27 & n.11 (Br. 29–32).

If jurisdiction rested solely on the original complaint, parties could use strategic pleadings to circumvent the statutory requirements for federal jurisdiction. Imagine the following scenario: Chad, a citizen of Kentucky, wants to sue Ashley (California citizen) and Joe (Kentucky citizen) because they breached a million-dollar book contract with him. So, he sues Ashley in federal court first. Then a couple of weeks later, he amends as a matter of right to add Joe. Of course, the federal court would lose jurisdiction at that point. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374−75 (1978) (holding that plaintiff's amendment to complaint, adding a nondiverse defendant, destroyed the diversity jurisdiction

that existed when the original complaint was filed); *Drake v. City of Detroit*, 266 F. Appx. 444, 448 (6th Cir. 2008) (holding that, for purposes of determining diversity jurisdiction, the original "complaint is a nullity, because an amended complaint supercedes all prior complaints" (citation omitted)); *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 507–08 (5th Cir. 1985) (holding that amended complaint must be independently assessed for jurisdiction). The plaintiffs' absolutist version of the time-of-filing rule, however, would transform a properly pled complaint into a Trojan Horse for bankruptcy courts. Once the original complaint entered the court's jurisdictional walls, parties could use it to smuggle all manner of claims into the bankruptcy courts. Such a gaping loophole would compromise Congress's jurisdictional scheme, which created bankruptcy jurisdiction for the purpose of furthering the administration of bankruptcy estates, *see Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995); *Matter of Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir. 1987) ("The bankruptcy jurisdiction is designed to provide a single forum for dealing with all claims to the bankrupt's assets. It extends no farther than its purpose."). Thus, the issue in this case is whether the second amended complaint established subject-matter jurisdiction for the Bankruptcy Court.

### B.    "Related To" Jurisdiction Over the Second Amendment Complaint

This case involves an adversary proceeding between nondebtors, so the Bankruptcy Court's jurisdiction rests "solely" on 28 U.S.C. § 1334(b). *In re Wolverine Radio Co.*, 930 F.2d at 1140 (citing *Quattrone Accountants, Inc. v. I.R.S.*, 895 F.2d 921, 926 (3d Cir. 1990)). Section 1334(b) identifies four distinct matters that bankruptcy courts have jurisdiction over: (1) "cases under title 11"; (2) "proceedings arising under title 11"; (3) proceedings "arising in" a case under title 11; and (4) proceedings "related to" a case under title 11.  28 U.S.C.

11

§ 1334(a), (b); *In re Wolverine Radio Co.*, 930 F.2d at 1141.  These four categories define jurisdiction "conjunctively."  *Id.* (citing *In re Wood*, 825 F.2d 90, 93 (5th Cir. 1987)). "Related to" jurisdiction is the most expansive category, covering any proceeding that could have a conceivable effect on the administration of the estate.  *See id.*  Because "related to" jurisdiction covers any proceeding that would fall under the other forms, Courts assessing § 1334(b) jurisdiction therefore need only determine whether the matter is "related to" the bankruptcy.  *Id.*

A proceeding is "related to" the bankruptcy if "'the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'"  *Id.* at 1142 (quoting *In re Pacor, Inc.*, 743 F.2d 984, 994 (3d Cir. 1984)) (emphasis omitted).  This broad grant of jurisdiction "empowers courts to 'deal efficiently and effectively with the entire universe of matters connected with bankruptcy estates.'"  *McKinstry v. Sergent*, 442 B.R. 567, 573 (E.D. Ky. 2011) (quoting *In re Boston Reg'l Med. Ctr., Inc.*, 410 F.3d 100, 105 (1st Cir. 2005)).  Damage suits brought by a trustee on behalf of the estate have the most obvious and direct effect on the administration of the estate.  *See In re Boston Reg'l Med. Ctr.*, 410 F.3d at 105.  They affect the amount of funds available to distribute among creditors.  *See In re Toledo*, 170 F.3d 1340, 1345–46 (11th Cir. 1999).  This is precisely the kind of effect that the plaintiffs claim this adversary proceeding would have on the Alma Estate.  *See* R. 7 at 37–38 (Br. 32–33).  Of course, adversary proceedings may also affect the administration of the estate more tangentially.  *See, e.g.*, *Pacor*, 743 F.2d at 994 (collecting cases); *In re Canion*, 196 F.3d 579, 585–87 (5th Cir. 1999).  Courts therefore measure "related to" jurisdiction by asking whether the adversary proceeding's outcome can conceivably "alter

12

the debtor's rights, liabilities, options, or freedom of action (either positively or negatively)" or otherwise impact "the handling and administration of the bankrupt estate" in "any way." *Id.* The Sixth Circuit, however, has held out the possibility that "situations may arise where an extremely tenuous connection to the estate would not satisfy the jurisdictional requirement." *In re Salem Mortg. Co.*, 783 F.2d 626, 634 (6th Cir. 1986); *In re Dow Corning Corp.*, 86 F.3d 482, 489 (6th Cir. 1996) (quoting *In re Salem Mortg. Co.*).

The second amended complaint brings a host of state-law tort claims against the Pikeville Energy, Richard, and Morehouse for their alleged attempts to bilk Alma. Those claims are not "related to" the underlying bankruptcy because the Estate had nothing to gain or lose from them.

First, the Estate had nothing to gain from the claims against Pikeville Energy, Richard, and Morehouse. The plaintiffs brought only state-law tort claims against the defendants, so only money damages were at issue. *See Adversary Proceeding*, R. 416 at 25–28 (requesting only monetary damages for breach of fiduciary duty against Pikeville Energy and Richard); *id.* at 28–30 (same for aiding and abetting breach of fiduciary duty against Richard, Morehouse, and Pikeville Energy); *id.* at 32–33 (same for conversion against Richard); *id.* at 34–36 (same for unjust enrichment against Pikeville Energy, Richard, and Morehouse); *id.* at 36–38 (same for aiding and abetting breach of fiduciary duty against Pikeville Energy, Richard, and Morehouse); *id.* at 38–40 (same for aiding and abetting breach of fiduciary duty against Pikeville Energy, Richard, and Morehouse). And the Estate had no stake whatsoever in those damage claims because the 2009 Settlement transferred the Estate's right to "any and all proceeds" from them "to THC and only THC." R. 4-1 at 8

13

(quoting 2009 Settlement Agreement at ¶ 8).   So the outcome of the proceeding could not enlarge the Estate's assets or otherwise positively affect the administration of the estate in any way.   Therefore, the damages claims were not "related to" the bankruptcy under § 1334(b).  *See Matter of Xonics, Inc.*, 813 F.2d at 131 (holding that, where an estate has disclaimed any interest in the claim at issue so that resolving the claim will not affect the amount or allocation of the estate's property, there is no "related to" jurisdiction); *In re Imp. & Mini Car Parts, Ltd., Inc.*, 203 B.R. 124, 129 (N.D. Ind. 1996) (holding same where "the judgment at issue in this case is no longer property of the estate"), *aff'd sub nom. Matter of Imp. & Mini Car Parts, Ltd., Inc.*, 97 F.3d 1454 (7th Cir. 1996) (unpublished table decision); *Ilardo v. Al's Diesel, Inc.* (*In re World Parts, LLC*), 322 B.R. 37, 42 (Bankr. W.D.N.Y. 2005) (holding same where "the trustee has commenced an action that belongs to [a creditor]").

Second, the Estate had nothing to lose from the second amended complaint because prosecuting its claims would not expose the Estate to any potential liabilities.   None of the defendants named in the second amended complaint had plausible counterclaims against the Estate.   The proof is in their answers to prior complaints.   None of the defendants filed crossclaims against Alma in answering the original complaint.  *See Adversary Proceeding*, R. 23 (naming only the Halle Entities and their associates, not Alma, in Pikeville Energy's Cross-Claim in response to the original complaint).   And none of them filed counterclaims against the Estate when answering the First Amended Complaint (which brought the same claims against them).  *See id.*, R. 91 (Pikeville Energy's Answer); *id.*, R. 92 (Richard's Answer); *id.*, R. 97 (Morehouse's Answer).   The plaintiffs confirm the defendants' lack of

14

colorable counterclaims by failing to identify any potential counterclaims that might have been raised in the proceeding. The second amended complaint therefore lacked the potential to alter the Estate's liabilities. *See In re Wolverine Radio Co.*, 930 F.2d at 1142 (quoting *Pacor*); *cf. In re Buckeye Steel Castings Co., Inc.*, 306 B.R. 186, 187–88 (B.A.P. 6th Cir. 2004) (bankruptcy court has no "related to" jurisdiction where the only potential effect on the estate comes from "a not-yet-raised defense" because it cannot adjudicate the "hypothetical facts of a hypothetical case" (citation omitted)). Thus, the Estate had no stake in the second amended complaint's claims that would create "related to" jurisdiction. *See, e.g.*, *Diaconx Corp. v. Hamilton Bank* (*In re Diaconx Corp.*), 65 B.R. 139, 140 (E.D. Pa. 1986) (holding that court lacked "related to" jurisdiction over a count because the estate would receive none of the award if the claim succeeded and would be equally "unaffected" if the claim failed).

The plaintiffs point to just one basis for "related to" jurisdiction: the 2011 Assignment. *See* R. 7 at 32–33; *Adversary Proceeding*, R. 521 at 2, 8–10. But that Assignment cannot create jurisdiction. The plaintiffs created the 2011 Assignment months after they filed the second amended complaint. *Compare Adversary Proceeding*, R. 416 (filing complaint on November 11, 2010), *with id.*, R. 521, Ex. 2 at 2 (indicating 2011 Assignment occurred on February 2, 2011). Just as subsequent events cannot divest a court of jurisdiction, subsequent events cannot vest a court with jurisdiction that did not exist at the time the amended complaint was filed. *See Whitmire v. Victus Ltd.*, 212 F.3d 885, 888 (5th Cir. 2000) (refusing to allow parties to "retroactively create subject matter jurisdiction" by amendment under 28 U.S.C. § 1653); *Associated Ins. Mgmt. Corp. v. Ark. Gen. Agency, Inc.*,

15

149 F.3d 794, 796–97 (8th Cir. 1998) ("[T]he district court cannot retroactively create diversity jurisdiction if it did not exist when the complaint was filed.").

Since the Estate had no stake in the second amended complaint at the time it was filed, the plaintiffs have no proper basis for claiming "related to" jurisdiction.  *See In re Athos Steel & Aluminum, Inc.*, 71 B.R. at 531.  Therefore, the Bankruptcy Court did not err in dismissing the complaint against Pikeville Energy, Richard, and Morehouse for want of subject-matter jurisdiction.

### C.      "Arising In" Jurisdiction Over the Second Amended Complaint

The plaintiffs also dedicate a substantial portion of their brief to arguing that the Bankruptcy Court had "arising in" jurisdiction over the complaint.  R. 7 at 28–31 (Br. 28–31).  The Court need not address this issue.  Because the Bankruptcy Court did not have "related to" jurisdiction it logically could not have "arising in" jurisdiction.  *See In re Wolverine Radio Co.*, 930 F.2d at 1141 (reasoning that, if a matter is not at least "related to" a bankruptcy proceeding, it cannot arise in or arise under that proceeding).  The Bankruptcy Court therefore did not err in declining to find "arising in" jurisdiction over the claims against Pikeville Energy, Richard, and Morehouse.

## II.      Permissive Abstention as to the Claims Against Banner

The Bankruptcy Court dismissed the plaintiffs' claims against Banner on different grounds.  *See* R. 4-3 at 6–11.  The Banner claims were all state-law torts that followed from the plaintiffs' allegation that Richard wrongly diverted investor funds meant for Alma to his own company, Banner Industries.  *See Adversary Proceeding*, R. 416 at 30–38.  But, unlike the claims against the other three defendants, the 2009 Settlement Agreement did not transfer

16

the Estate's right to the claims against Banner.  *See* R. 4-3 at 6–7.[2]  So the Bankruptcy Court had "related to" jurisdiction over the proceeding because it would determine the amount of funds in the Estate available to distribute among creditors.  *See In re Toledo*, 170 F.3d at 1345–46.  The court, however, declined to exercise that jurisdiction based on its assessment of the factors for permissive abstention under 28 U.S.C. § 1334(c)(1).  R. 4-3 at 10–11.

The doctrine of permissive abstention grants bankruptcy courts the discretion to decline to exercise jurisdiction over particular proceedings.  28 U.S.C. § 1334(c)(1).  The doctrine has two fundamental goals:  (1) promoting "efficient and fair adjudication of bankruptcy cases," *In re Salem Mortg. Co.*, 783 F.2d at 635; and (2) ensuring "comity with State courts" and "respect for State law."  *In re Wood*, 825 F.2d at 93 (citation omitted).  Courts have developed sets of enumerated factors for analyzing whether abstention in a case would serve those two general goals.  Here, the Bankruptcy Court identified nine factors that guided its analysis:

> (1) the impact upon the efficient administration of the estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable state law; (4) the jurisdictional basis; (5) the degree of relatedness to the bankruptcy case; (6) the existence of forum shopping; (7) the existence of the right to a jury trial; (8) the presence of non-debtor parties in the case; and (9) any unusual or other significant factors.

R. 4-3 at 10–11 (citations omitted).  None of the parties quarrel with the Bankruptcy Court's decision to focus on these nine factors.

---

[2] It is unclear whether Spradlin's failure to transfer the Estate's claims against Banner in the 2009 Settlement Agreement was an oversight.  It would be an odd strategy to sue the principal conspirator in the scheme to defraud Alma but not sue the accomplice who allegedly possessed all the ill-gotten funds.  Of course, THC chose at least one other unconventional approach.  As the Bankruptcy Court points out, THC at one point alleges that Alma's venture with Blackberry and Pikeville Energy would have continued if Richard had not diverted funds, even though the thrust of THC's amended complaint was that Blackberry and Pikeville Energy were defrauding Alma.  *See* R. 4-3 at 11 (citing *Adversary Proceeding*, R. 416 ¶ 110).

As its name implies, permissive abstention is left to the sound discretion of the bankruptcy court. *See Baker v. Simpson*, 613 F.3d 346, 352 (2d Cir. 2010). The Court therefore reviews the Bankruptcy Court's decision to determine whether it abused that discretion. *McDaniel v. ABN Amro Mortg. Group*, 364 B.R. 644, 650 (S.D. Ohio 2007) (citation omitted). Here, the Court is not left with a "definite and firm conviction" that the Bankruptcy Court committed "a clear error of judgment" by abstaining under § 1334(c)(1). *Lewis v. United Joint Venture,* 691 F.3d 835, 839 (6th Cir. 2012).

*Efficient Administration:* The Bankruptcy Court found that it would be more efficient for everyone, including the Estate, to have the plaintiffs pursue their claims against all four defendants in a single state-court action. R. 4-3 at 11 ("[T]he Banner and Non-Banner claims together can be tried together in a state court forum."). The suit that Pikeville Energy, Banner, and Richard have filed in Pike Circuit Court provides a perfect vehicle for doing so. *See* R. 9 at 23 & n.7 (describing state-court suit); R. 4-3 at 11. And imagine the inefficiencies of splitting apart the plaintiffs' claims against Richard and Banner. Richard (the alleged principal perpetrator) would be sued in state court, while Banner (his alleged aider and abettor) would be sued in bankruptcy court. Also, what about inconsistent verdicts? And, why is Banner here at all? Because Banner allegedly has the money. What good is the perp without the cash?

The plaintiffs' only answer is to protest that the proceedings in the state-court suit have dragged along. *See* R. 7 at 40 (Br. 35). But the defendants point to evidence suggesting that any delay in their state court case has been due to dilatory tactics by the Halle Entities.

18

*See* R. 10 at 30 & n.16 (Br. 25 & n.16); R. 10-2.  The plaintiffs did not dispute that evidence. *See* R. 11 (focusing solely on subject-matter jurisdiction issue).

The Bankruptcy Court determined that remand to state court would further an efficient administration of the Estate.  That decision was sound.

***Jurisdictional Basis and Degree of Relatedness:***  Both the "jurisdictional basis" and the "degree of relatedness to the bankruptcy case" factors weigh against abstention only if the plaintiffs' claims against Banner are a "core" proceeding.  Adversary proceedings are either "core" or "non-core" based on the claims' degree of relation to the underlying bankruptcy case.  "Core" proceedings are those "arising under title 11" or "'arising in a case under title 11."  28 U.S.C. § 157(b)(1); *In re Wolverine Radio Co.*, 930 F.2d at 1144. Conversely, "non-core" proceedings are those that are merely "related to a case under title 11."  *Id.*  "Core" proceedings—proceedings that fall within the heart of the bankruptcy's jurisdiction—cannot be as easily remanded as proceedings at the jurisdictional periphery. *McDaniel*, 364 B.R. at 655 (holding that a proceeding must be "core" to counsel against abstention under the "[j]urisdictional basis" and "relatedness or remoteness" factors).

The plaintiffs argue that the Bankruptcy Court had "arising in" jurisdiction over their claims against Banner and therefore those claims were a "core" proceeding.  R. 7 at 40 (Br. 35).  Why?  The plaintiffs simply assert that the reasons why their claims against the other three defendants were "core" apply equally to Banner.  *Id.* at 41 (Br. 36).  But they overlook a crucial distinction between Banner Industries and its codefendants:  Banner was not a party to the bankruptcy case and had no direct involvement with the Estate.  Banner had not entered into a contract with the Estate.  R. 4-3 at 9; *In re Ben Cooper, Inc.*, 896 F.2d

1394, 1399–400 (2d Cir. 1990) (holding that a post-petition claim on a post-petition insurance contract is core).  Banner also did not file a proof of claim, bring a claim against the Estate or Spradlin, or take any other action in the underlying bankruptcy case.  R. 4-3 at 8–9.  "Arising in" jurisdiction applies to "claims that by their nature, not their particular factual circumstance, could only arise in the context of a bankruptcy case."  *Stoe v. Flaherty*, 436 F.3d 209, 218 (3d Cir. 2006) (citing *Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999)).  And nothing in the plaintiffs' claims against Banner is anchored in the underlying bankruptcy proceedings.

None of the precedent that the plaintiffs cite applies here because those cases all involve claims against parties for actions they took in prior proceedings administering the estate.  This is not a suit against the trustee or counsel to the trustee for actions they took in administering the bankruptcy estate.  *See In re Lowenbraun*, 453 F.3d 314, 321 (6th Cir. 2006) (action against a counsel to the trustee, the functional equivalent of the trustee, for a "Contempt Motion" he filed in assisting with administration of the estate); *In re Heinsohn*, 247 B.R. 237, 244 (E.D. Tenn. 2000) (action against trustee for malicious instituting a referral alleging bankruptcy fraud); *In re Black Diamond Min. Co., LLC*, No. 08-70066, 2011 WL 2518956, at *6 (Bankr. E.D. Ky. June 23, 2011), *vacated in part sub nom. Sergent v. McKinstry*, 472 B.R. 387 (E.D. Ky. 2012) (action against "the functional equivalent of a trustee" for actions they took in restructuring the estate).  The Estate did not enter into a contract of sale with Banner as part of its "efforts to liquidate estate assets."  *In re Arnold Print Works, Inc.*, 815 F.2d 165, 168 (1st Cir. 1987).

Therefore, both the "jurisdictional basis" and the "degree of relatedness to the bankruptcy case" factors permit abstention. *See McDaniel*, 364 B.R. at 655 (holding that a proceeding must be "core" to counsel against abstention under the "[j]urisdictional basis" and "relatedness or remoteness" factor).

**State Law Issues:**   The Bankruptcy Court concluded that the state law issues "predominate" the plaintiff's complaint against Banner. R. 4-3 at 11. Indeed, there is not a sliver of a federal claim or a scrap of bankruptcy law at issue in the counts against Banner. *See Adversary Proceeding*, R. 416 at 30–38. The plaintiffs do not contest this factor.

**Nondebtor Parties:**   The Bankruptcy Court also rightly pointed out the majority of parties in the adversary proceeding were nondebtors and had not filed claims of proof against Alma. R. 4-3 at 11. So the factor weighs in favor of abstention.

**Jury Trial:**   The plaintiffs point out that the defendants waived their right to a jury trial in the adversary proceeding and that there was no evidence that they themselves would invoke the right in the adversary proceeding. R. 7 at 41–42 (Br. 36–37). Thus, it appears that the Bankruptcy Court erred in finding the "existence of the right to a jury trial" here. R. 4-3 at 11.

That single factor, however, does not outweigh the many counseling in favor of abstention. *See id.* (citing, *inter alia*, predominance of state law and "noncore" nature of claims). The Court therefore does not have a "definite and firm conviction" that the Bankruptcy Court committed "a clear error of judgment" by abstaining under § 1334(c)(1). *McDaniel*, 364 B.R. at 650 (S.D. Ohio 2007) (internal quotation marks omitted).

21

## CONCLUSION

Accordingly, it is **ORDERED** as follows:

(1)     The Bankruptcy Court's Judgment, *Spradlin v. Pikeville Energy Group, LLC* (*In re Alma Energy, LLC*), No. 7:09-ap-07005-jl (Bankr. E.D. Ky. Jan. 1, 2012), R. 611, is **AFFIRMED**.

(2)     The Bankruptcy Court's Order Granting in Part Motion to Alter or Amend, *Spradlin v. Pikeville Energy Group, LLC* (*In re Alma Energy, LLC*), No. 7:09-ap-07005-jl (Bankr. E.D. Ky. Jan. 1, 2012), R. 640, is **AFFIRMED**.

(3)     The Bankruptcy Court's Order Granting Motion to Dismiss and Dismissing the Second Amended Complaint, *Spradlin v. Pikeville Energy Group, LLC* (*In re Alma Energy, LLC*), No. 7:09-ap-07005-jl (Bankr. E.D. Ky. Jan. 1, 2012), R. 643 is **AFFIRMED**.

This the 26th day of December, 2012.



**Signed By:**

**_Amul R. Thapar_**

**United States District Judge**